Reymundo Sanchez-Hernandez
Fed. Reg. No. 38740-198
3600 Guard Road
Lompoc, CA 93436-2705

FILED

MAY 1 9 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF CALIFORNIA

FILED

OCT 28 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES OF AMERICA,                )
                                         )
            Plaintiff / Appellee         )
                                         )
v.                                       )
                                         )
REYMUNDO SANCHEZ-HERNANDEZ               )
                      Respondent.        )
_____)

U.S.C.A. NO. 04-50133
CASE NO. CR-99-02401-MLH

PETITION FOR ACTUAL INNOCENCE
CLAIM PURSUANT TO HABEAS
CORPUS 28 U.S.C. § 2241

'11CV1120 AJB BGS

PETITION FOR ACTUAL INNOCENCE PURSUANT TO
HABEAS CORPUS STATUTES 28 U.S.C. § 2241

Petitioner moves this Honorable Court to entertain this application for

collateral review of constitution of federally protected rights. Petitioner

asserts this petition may be entertained, since no usual remedy is available

for collateral review of constitution of federally protected rights. Petitioner

asserts this petition may be entertained, since no usual remedy is available

and the § 2255 is inadequate, or effective. Further, since a prior unsuccessful

motion attacking the sentence or the fact that a second such motion would be

barred as a second or successive under the Antiterrorism and Effective Death

Penalty Act (AEDPA). This does not make motion attacking sentence inadequate

or ineffective so as to allow federal prisoner to file habeas petition.

Toliver v. Dobre, 221 F.3d 876 (5th Cir. 2000).

Petitioner's allegations implicate infringement upon constitutional or

federally protected rights. Sections 2241, et seq., see Cronnon v. Alabama,

537 F.2d 246, 250 (5th Cir.) cert denied; 440 U.S. 974 (1979), Chance v. Garrison
537 F.2d 1212, 1214 (4th Cir. 1976), Israel v. Odom, 521 F.2d 1370, 1376 (7th
Cir. 1975), McCord v. Henderson, 384 F.2d 132, 135 (6th Cir. 1967).

28 U.S.C. § 2241 and § 2254 authorize issuance of the writ on behalf of
anyone in custody in violation of the laws or treaties of the United States as
well as those in custody in violation of the Constitution. See Townsend v.
Sain, 372 US 293, 312 (1963). Further, unconstitutional error, provide no basis
for collateral attack unless it involves a fundamental defect which inherently
results in a complete miscarriage of justice. Hill v. United States, 368 US
424, 428 (1962). See United States v. addonizio, 422 US 178 (1979), United
States v. Timmreck, 441 US 780 (1979), Davis v. United States, 417 US 333,
356 (1974).

Also, the Supreme Court has ruled that when a prisoner demonstrates that
28 U.S.C. § 2255 is inadequate, the habeas corpus provisions under section
§ 2241 remain open to afford a claimant necessary relief. United States v.
Hayman, 342 US 205, 217, 72 S.Ct. 263, 96 L.Ed 232 (1952), Id at 233. See also,
United States v. Lurie, 207 F.3d 1075 (9th Cir. 2000) at 1077, DeSimone v.
Lacy, 805 F.2d 271 (9th Cir. 1986) at. 323.

The prisoner invokes the Court's jurisdiction pursuant to 28 U.S.C. §
1331 in that there exists a federal question, to-wit, whether the prisoner is
currently serving a sentence in excess of that which is constitutionally per-
missible under 841(a)(1) and 846 in violation of the 5th and 6th Amendments.

Further, the execution of the sentence is prohibited on Du Process
grounds given the fundamentally flawed nature of the proceedings given rise to
his current imprisonment.

The Petitioner invokes the jurisdiction of the District Court pursuant to
28 U.S.C. § 2201 in that, a case or controversy, exists where the Petitioner
is currently imprisoned at the Federal Correctional Institution in Lompoc, CA.

2

and is being punished despite several fundamental prosecutorial and court
errors which prevent fair and even handed consideration of several listed and
unlisted issues of serious import and constitutional dimension.

### STATEMENT OF JURISDICTION

This Court has subject matter and personal jurisdiction over the issues,
and parties pursuant to Habeas Corpus Statutes Title 18 U.S.C. § 2241 - § 2255,
and Title 18 U.S.C. § 3231. The remedy of the Sentencing Court is inadequate
by reason of being barred and sanctioned for filing what the District Court
deems frivolous motions. So Petitioner is filing this application in the Ninth
Circuit, the district of confinement pursuant to Winston v. Mustrain, 562 F.2d
565 (9th Cir. 1977), Zaffarano v. Fitzpatrick, 404 F.2d 474 (2nd Cir. 1967).
Petitioner's previous denial of § 2255 remedy is not the result of judicial
bias. Tripati v. Henman, 845 F.2d 205 (9th Cir. 1988).

The law is clear as to the Trial Court's jurisdiction to act on an appli-
cation for 28 U.S.C. § 2241 relief of constitutional or federally protected
right. See Townsend v. Sain, 372 US 293, 312 (1963). In Obado v. New Jersey,
328 F.3d 816 (3rd Cir. 2002),  the Third Circuit Court of Appeals wrote, "the
unavailability of habeas corpus relief does not leave deserving petitioners
entirely without recourse because they may bring claims of Writ of Error."
There is no reason why relief cannot be granted by review through the instru-
mentality of 28 U.S.C. § 2241 - 2255.

The Court is vested with the judicial power to fashion the petitioner's
motion with a remedy where there is an invasion of a federally protected right.
Bell v. Hood, 372 US 684, 90 L.Ed 994, 19 ALR 383. Petitioner asks this Court
to take judicial notice of all matters of settled law. This petition is based
upon the argument contained herein this document, as well as all records
and files to the instant case to include any and all evidence that may be
submitted to this Honorable Court, whether by brief or evidentiary hearing.

Based on settled law, the pleadings, exhibits and evidence presented in the body of this application "no alternative means by which he may seek relief exists." see Kerri Supra, 426 US 403, and "...this pleading meets the burden of showing that the petitioner's right to the writ is clear and undisputable." United States v. Ovell, 176 US 576, 582, 19 S.Ct. 286 (1899).

Finally Appellant postulates he is entitled to USC 2241(c)(3) because he maintains that his custody falls within the statute definition, subsection (c)(3).

### CAUSE AND PREJUDICE FOR APPELLANT'S
### PROCEDURAL DEFAULT AND RULE 51

The doctrine of "Cause and Prejudice" overcomes any procedural defaults, or issues that are not raised in the District Court during trial proceeding. Cause, by reason of ineffectiveness of counsel and actual prejudice resulting there from. Murray v. Carrier, 477 US 478, 494-95 (1986). Engle v. Isaac, 467 US 107 (1982). See Wainwright v. Sykes, 433 US 72 (1977). Engle v. Isaac put the final touches on this process, requiring the Cause and Prejudice Standard for all cases involving a procedural default, whether of constitutional magnitude or not. See Estelle v. Williams, 425 US 501 (1976), Francis v. Henderson, 425 US 536 (1976), Davis v. United States, 411 US 233 (1973). See Mclesky v. Zant, 499 US at 492 (1992). Legal standard applied to Schlup v. Delo, 513 US 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Additionally, these claims can be brought due to fundamental defect resulting in a complete miscarriage of justice. United States v. Smith, 843 F.2d 1148, 1149 (8th Cir. 1988). Bousley v. United States, 573 US 614, 611, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

### PETITIONER'S ACTUAL INNOCENCE CLAIM OVERCOMES
### ANY PROCEDURAL OR SUBSTANTIVE BARS

**Standard of Review:**

An assertion of "Actual Innocence" involves a "Gateway Claim" and a "Free-Standing Claim." See House v. Bell, 547 US 518, ____ 126 S.Ct 2064, 2067-68, 165 L.Ed.2d 1 (2006). The gateway Claim of actual innocence exists when a petitioner attempts to avoid a procedural bar that would otherwise preclude him or her from bringing other claims. See Id at ____, 126 S.Ct at 2068, Bensley, 523 US at 623.

**Analysis;**

Although the claim of actual innocence serves as a gateway for a petitioner to argue his or her other claims before the Habeas Court, House, US 126 S.Ct at 2068. Petitioner is using it as a compliment to the "Cause and Prejudice" standard that permits a petitioner to bring an otherwise procedurally barred claim. See McNeal, 249 F.3d at 749 ("A defendant who has procedurally defaulted a claim by failing to raise it on direct review, may bring that claim by demonstrating 'Cause' for the default and 'Prejudice' or "Actual Innocence.") Camacho v. United States, 204 F.Supp.2d 667, 672 (S.D.N.Y. 2002) ("Actual innocence gateway used to vacate insufficiency of the evidence claim on a 924(c) charge in a §2255 proceedings). Spence v. Superindent, Great Meadow Cor. Fac., 219 F.3d 162, 171-172 (2nd Cir. 2000) (Actual innocence exception applies at sentencing and trumps substantive and substantive bars.) A free standing claim of actual innocence on the other hand is Petitioner's attempt to prove his or her innocence outright. See House, at 1, 125 SCt. at 2086, 87. See also herrera v. Collins, 506 US 390, 417, 113 S.Ct 853, 122 L.Ed.2d 203 (1993) (recognizing the possibility of such a claim). In other words, a successful free standing claim of actual

5

## PROCEDURAL HISTORY

Mr. Sanchez-Hernandez was indicted on August 18, 1999 [CR 1]. The indictment listed six counts, including conspiracy to distribute methamphetamine pursuant to 21 U.S.C. §§846 and 841(a)(1), conspiracy to import methamphetamine pursuant to 21 U.S.C. §§963 and 952, distribution of methamphetamine pursuant to 21 U.S.C. §§841(a)(1), and distribution of methamphetamine pursuant to 21 U.S.C. §§952 and 960, and a violation of 18 U.S.C. §2, aiding and abetting commision of these crimes. [ER 1-16]. On August 8, 2000, trial commenced. On August 17, 2000, the jury returned a verdict of guilty on counts 1 through 4 and hung on counts 5 and 6. [CR 52]. On October 22, 2001, the Honorable Marilyn L. Huff sentenced Mr. Sanchez-Hernandez to a sentence of 188 months concurrent on counts 1 through 4 with a five-year period of supervised release. [CR 80].

Mr. Sanchez-Hernandez appealed. [CR 82]. The Government cross appealed the District Court's refusal to impose a two-level upward adjustment under U.S.S.G. §2D1.1(b)(4). [CR 88]. This Court denied Mr. Sanchez-Hernandez's appeal, granted the Government's cross appeal and remanded the case for re-sentencing consistent with its memorandum opinion filed on December 19, 2002. [CR 92].

Accordingly, on March 15, 2004, re-sentenced Mr. Sanchez-Hernandez to a sentence of 292 months concurrent on counts 1 through 4 with a 5-year period of supervised release. [CR 115]. Mr. Sanchez-Hernandez now appeals that sentence. [CR 117].

### 2. Mr. Sanchez-Hernandez's March 15, 2004 Re-Sentencing.

On March 15, 2004, the District Court conducted a sentencing hearing. [CR 115; ER 29-62]. The District Court found that Mr. Sanchez-Hernandez was responsible for 500 grams of methamphetamine as found by the jury's verdict.

6

[ER 18, 31].  The District Court used U.S.S.G. §2D1.1(2), which applies to
quantities of "actual" methamphetamine ranging from 500 grams up to 1.5 kilograms,
to determine the base offense level.  [ER 53].  The District Court's base offense
calculation, thus, was a judicial determination at the time of sentencing that
the methamphetamine was actual methamphetamine.  Id.  Accordingly, under §2D1.1(2),
the District Court applied a base offense level of 36.  Id.

Based upon additional judicial findings, the District Court adjusted
Mr. Sanchez-Hernandez's sentence upward.  Id.  First, the District Court applied
a two-level enhancement pursuant to U.S.S.G. §2D1.1(b)(4).  Id.  Then, the
District Court applied a two-level upward adjustment pursuant to U.S.S.G. §3B1.1
based upon Mr. Sanhez-Hernandez's role in the offense.  Id.  The District Court
then determined that a three-level departure under for a combination of factors
was applicable.  [ER 59].  These adjustments and departures resulted in a final
adjusted offense level of 37.  Id.  The District Court further determined that
the applicable criminal history category was IV.  Id.  The resultant guideline
range became 292 to 365 months.  Id.  The District Court sentenced Mr. Sanchez-
Hernandez to concurrent sentences of 292 months of custody with a 5-year period
of supervised release to follow.  [ER 59-60].

7

## SUMMARY OF THE ARGUMENT

The District Court deprived Mr. Sanchez-Hernandez of his Federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence as required by <u>Blakely v. Washington</u>, ___ S.Ct. ___, 2004 WL 1402697 (2004), when it made judicial findings for purposes of sentencing that exceeded the scope of the jury's verdict.  These findings included (1) the base offense level based on the methamphetamine type and quantity at sentencing, (2) a two-level enhancement pursuant to specific offense characteristic U.S.S.G. §2D1.1(b)(4); (3)  a two-level upward adjustment for role pursuant to U.S.S.G. §3B1.1; and (4) the criminal history category pursuant to Chapter 4 of the Guidelines, all which the jury verdict did not authorize.

Alternatively, that imposition of the two-level enhancement per §2D1.1(b)(4) constituted impermissible double counting because it was duplicitave punishment resulting from increases under both the statutes and guidelines for substantially the same harm.

the intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §846. Count 21 charges that in or about December 1995, the defendant and Priscilla Gonzalez knowingly and intentionally distributed approximately 2 pounds of methamphetamine, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2.

Count 23 charges that in or about December 20, 1995, the defendant and Priscilla Gonzalez did knowingly engage and attempt to engage in a monetary transaction affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of funds derived from a specified unlawful activity, narcotics distribution, in violation of 21 U.S.C. §841(a)(1), which transfer of funds was for the purchase of a vehicle, in violation of 18 U.S.C. §§1957 and 2.

Count 24 charges that on January 25, 1996, the defendant, along with Mauro Cruz Barragan, William Smith, and Priscilla Gonzalez, knowingly and intentionally possessed with intent to distribute 1 pound of methamphetamine, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2. Count 25 charges that on January 25, 1996, the defendant, along with Mauro Cruz Barragan, William Smith, and Priscilla Gonzalez knowingly maintained a place for the purpose of distributing a controlled substance, in violation of 21 U.S.C. §856(a)(1).

On June 25, 2996, the defendant was found not guilty by jury on Count 23 of the Superseding Indictment and guilty on Counts 1, 21, 24, and 25. He was continued in custody pending sentencing.

Codefendants' dispositions are as follows: Santiago Cruz Camacho entered a guilty plea on June 17, 1996 to Counts 1, 2, 3, 4, 5, 7, 8, 9, 11, 12, 13, 16, 18, and 20 of the Superseding Indictment. On June 25, 1996, Priscilla Gonzalez was found guilty on counts 1, 21, 24, and 25 of the Superseding Indictment. William Smith pled guilty to Count 25 of the Superseding Indictment on June

9

17, 1996. Mauro Cruz Barragan entered a guilty plea to Counts 1 and 17 of
the Superseding Indictment on June 17, 1996. Nicky Jarnagin pled guilty to
a one-count Superseding Information on June 10, 1996. Carie Bolin entered
a guilty plea to Count 1 of the Superseding Indictment on June 10, 1996. On
June 3, 1996, Jeff Manning entered a guilty plea to a one-count Information.

## THE OFFENSE CONDUCT

This investigation began in June 1995 when the Drug Enforcement Admini-
stration (DEA) was contacted by a confidential informant regarding the distri-
bution of methamphetamine in Chickasha, Oklahoma. The informant advised that
Santiago Camacho was planning a large-scale operation which would bring metham-
phetamine from California to Chickasha, Oklahoma. As the investigation continued,
it was learned that numerous individuals were involved in this activity. These
individuals included, but were not limited to: Mauro Cruz Barragan, a.k.a.
Mario Salado, the defendant, Jose Hernandez, Priscilla Gonzales, Jeff Manning,
Nicky Jarnagin, Carie Bolin, Lillian Bean, William Smith, Allen Day, Jan Kennedy,
Scott Morgan, Todd Furra, Al Hooper, Reford Alcorn, Kim Hurd, and Jimmy Wise.

According to investigative agents, the conspiracy began in December 1994
and ended on January 25, 1996. The individuals involved in this conspiracy
were responsible tor distributing approximately 15½ kilograms of methamphetamine.
All of the methamphetamine distributed during this conspiracy is believed to
have been provided by the defendant to Santiago Camacho and Mauro Cruz Barragan.
Camacho was responsible for orchestrating the distribution of methamphetamine
from California to Chickasha, Oklahoma. It should be noted that after Camacho's
arrest in September 1995, Mauro Cruz Barragan began working directly with the
defendant.

Investigative reports reflect that Santiago Camacho was brought to Chickasha,
Oklahoma by Trent Trotter. After arriving in Chickasha, Camacho met Scott

10

Morgan.  Camacho subsequently developed a drug distribution relationship with
Morgan.  Morgan later introduced Camacho to Jeff Manning, who began obtaining
methamphetamine from Camacho.  Through his relationship with Morgan and Manning,
Camacho ultimately developed a drug distribution relationship with several
other individuals named in the conspiracy.

Investigating agents determined that the defendant made his initial app-
earance in Chickasha in June 1995.  It was on this occasion that the defendant
was introduced to Lillian Bean by Camacho.  Lillian Bean later testified at
trial that Camacho introduced the defendant as his "boss", indicating that
the defendant was the supplier of his drugs.  Mauro Cruz Barragan also testified
about the defendant's role in the conspiracy.  Barragan testified that Jose
was above Camacho, and he (Mauro) was below Camacho.  William Smith also provided
testimony at trial which indicated that the defendant was the supplier of the
methamphetamine.

The first occasion investigating agents are aware of that the defendant
directly delivered methamphetamine to Chickasha was in November 1995.  On this
occasion, he and his girlfriend, Priscilla Gonzalez, traveled from California
to Chickasha, Oklahoma.  During this trip, the defendant and Gonzalez transported
approximately 3 pounds of methamphetamine in their vehicle.  Once they arrived
in Chickasha, Camacho distributed the methamphetamine to Mauro Barragan.  Approx-
imately 3 pounds (1,360.8 grams) of methamphetamine are attributed to the defendant.

In late November 1995, Gonzalez drove to Tulsa, Oklahoma.  She transported
8 ounces of methamphetamine with her on this trip.  The defendant flew into
the Will Rogers Airport, Oklahoma City, Oklahoma, where he was picked up by
Gonzalez.  Together, they traveled to Chickasha and rented a room at the Royal
American Inn.  The 8 ounces of methamphetamine was delivered to Mauro Barragan.
Approximately 8 ounced (226.8 grams of methamphetamine are attributed to the
defendant.

11

In mid-December 1995, the defendant and Gonzalez drove from California to Chickasha, Oklahoma.  Together, they transported 2 pounds of methamphetamine in their vehicle.  Approximately 2 punds (907.2 grams) of methamphetamine are attributed to the defendant.

In January, 1996, the defendant traveled with Gonzalez from Merced, California, to Chickasha, Oklahoma.  They transported approximately 2 pounds of methamphetamine in the bumper of their vehicle during this trip.  Barragan removed the drugs from the bumper and went to Lillian Bean's residence.  Approximately 2 pounds (907.2 grams) of methamphetamine are attributed to the defendant.

On January 25, 1996, the defendant and Priscilla Gonzalez were arrested at the Royal American Inn in Chickasha, Oklahoma.  They denied any involvement in drug distribution; however, investigating agents later determined they were awaiting the sale of the 2 pound delivery of methamphetamine described in the previous paragraph.

Investigating agents advised that during the course of this investigation, they determined that from at least March of 1995 through the end of the conspiracy, the defendant was the supplier of the drugs distributed by Santiago Camacho and Mauro Barragan.

### THROUGH MULTIPLE CASES, THE SUPREME COURT HAS MADE THE

### HOLDINGS OF BLAKELY AND BOOKER RETROACTIVE

A. The Supreme Court simply applies settled precedent to new factual patterns to further clarify how the settled precedent applies in a new area.

B. That it is not a new rule at all and no question exists that the tenet of the new case applies to older cases.

C. Under Yates and as a matter of law, a rule regarding the prosecutor's duty to prove each element of the offense beyond a reasonable doubt decided well after a defendant's case if the governing rule applied prospectively to the defendant's case. Yates, 484 U.S. at 214.

D. The Apprendi Court announced a governing principle and the Blakely and Booker Courts "reaffirmed" the holding of Apprendi is grounded solidly in the express words of the Supreme Court in Blakely and Booker opinions.

E. Accordingly, under authority of Yates and because Apprendi was decided after Petitioner's conviction, the holdings of Blakely and Booker must be applied retrospectively to Petitioner's case.

By analogy, the Apprendi decision is Sandstrom, the governing principle that has become settled law. Sandstrom looked to the Due Process Clause to find that it requires the Government to prove to a jury every essential element of a crime beyond a reasonable doubt. Sandstrom, 442 U.S. at 520-24. Apprendi looked to the Sixth Amendment right to trial by jury to find that it requires punishments to be imposed based only upon facts "established by proof beyond a reasonable doubt." Apprendi, 120 S.Ct. at 2362-63.

By analogy, the Balkely and Booker decisions are Francis, the new applications of the settled principle to new facts and circumstances that expand the understanding of the settled principle. Francis was a Sandstrom-based challenge of an instruction that had the effect of relieving the Government of

13

its burden of proof of an element of an offense, but in another state (Georgia, not South Carolina) and under different facts. Francis, 471 U.S. at 313. Blakely was an Apprendi-based challenge to an increased penalty based upon a fact that was not proved to a jury in a different state (Washington, not New Jersey) and under different facts. Blakely, 124 S.Ct. at 2537. Booker was an Apprendi and Blakely-based challenge to an increased penalty based upon facts that were not proved to a jury, now in the federal system, and under different facts. Booker, 125 S.Ct. at 755-56. The Blakely and Booker decisions made clear the meaning of Apprendi for those who had doubted.

The similarities between the language of the Francis case applying Sandstrom principle and Blakely and Booker applying Apprendi are obvious. In Francis, the Court began with these words: "This case requires that we decide whether certain jury instructions in a criminal prosecution in which intent in an element of the crime charged and the only contested issue at trial satisfy the principles of Sandstrom v. Montana, 422 U.S. 510 (1979)." Francis, 471 U.S. at 309. In Blakely, the analysis section began: "This case requires us to apply the rule we expressed in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)." Blakely, 124 U.S. at 2536.

In Francis, the Court ended its opinion with this summary: "Today, we affirm the rule of Sandstrom and the wellspring due process principle from which it was drawn." Francis, 471 U.S. at 327. In Booker, the Court ended the first half of its opinion, "[a]ccordingly, we affirm our holding in Apprendi." Booker, 125 S.Ct. at 756.

Although Francis expressed new applications of the Sandstrom rule, Francis was not a new rule but an affirmation of the rule of Sandstrom. In the same way, although Blakely and Booker expressed new applications of the Apprendi rule, Blakely and Booker were not new rules themselves, but affirmations of Apprendi.

In sum, through Johnson, Yates, Apprendi, Blakely, and Booker, the Supreme

14

Court has spoken and the spoken word is that <u>Blakely</u> and <u>Booker</u> were applications of the <u>Apprendi</u> rule to new factual patterns to further clarify how <u>Apprendi</u> applies, that <u>Blakely</u> and <u>Booker</u> are not new rules at all, and no question exists that the tenets of <u>Blakely</u> and <u>Booker</u> apply to cases that became final before <u>Apprendi</u> was decided.  As a result, no doubt exists that the holdings of <u>Blakely</u> and <u>Booker</u> apply to Petitioner's case.

## THE SUPREME COURT'S DECISION IN APPRENDI V. NEW JERSEY WAS A

## GOVERNING PRINCIPLE, AND THE DECISION IN BLAKELY AND BOOKER

## WERE APPLICATIONS OF THAT GOVERNING PRINCIPLE

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000), the U.S. Supreme Court recognized the impact that the Sixth Amendment's right to trial by jury and other constitutional rights have on sentencing, finding that punishment must be based solely upon facts proved to a jury beyond a reasonable doubt:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the rule set forth in the concurring opinions in [Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215 (1999)]: "[I]t is unconstitutional for a legislature to remove from the jury assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

<u>Apprendi</u>, 120 S.Ct. at 2362-63, quoting <u>Jones</u>, 526 U.S. at 252-53, 119 S.Ct. at 1228-29 (Stevens, J., concurring), and citing 526 U.S. at 253, 119 S.Ct. at 1229 (Scalia, J., concurring) (internal citations omitted).

That groundbreaking holding applies <u>Retrospectively</u> to Petitioner's case because <u>Apprendi</u> was decided after Petitioner's conviction became final. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 107 S.Ct. 708 (1987) (announcing and applying the rule of full retroactivity to criminal cases on direct appeal). See, <u>Harper v. Va. Dept. of Taxation</u>, 509 U.S. 86, 113 S.Ct. 2510 (1993).

In the wake of <u>Apprendi</u>, many federal circuit and district courts interpreted "statutory maximum" to mean the maximum guidelines were not "statutory," even though the guidelines had the force and effect of law. <u>Stinson v. United States</u>, 508 U.S. 36, 113 S.Ct. 1913 (1993).

But a select few federal jurists understood the true meaning of <u>Apprendi</u>.

16

From the date of Apprendi's release, Justice O'Connor worried, "The actual principle underlying the Court's decision may be that any factor (other than prior conviction) that has effect, in real terms, of increasing the maximum punishment beyond an otherwise applicable range must be submitted to a jury and proved beyond a reasonable doubt." Apprendi, 120 S.Ct. at 2391 (O'Connor, J., dissenting). In other words, Justice O'Connor saw the rule of Apprendi applying to the federal sentencing guidelines.

By the end of that year, a panel of the Fifth Circuit noted that "Apprendi does not clearly resolve whether an enhancement which increases a sentence within the statutory range but which does not increase the sentence beyond that range must be proved to the jury." United States v. Meshack, 225 F.3d 556, 576 (5th Cir. 2000). See also, United States v. Hinshaw, 235 F.3d 565, 577 (10th Cir. 2000).

In United States v. Guevara, 277 F.3d 111 (2nd Cir. 2001), the issue before the Second Circuit was whether, in light of Apprendi, the defendant's Sixth Amendment rights were violated when the judge, rather than a jury, found by preponderance of the evidence that more than one kilogram of heroin was involved in a drug case and sentenced the defendant based upon a mandatory minimum term of imprisonment under 21 U.S.C. §841(b)(1)(A). Id. at 116. In essence, the question was whether the rules of Apprendi were invoked even though the defendant's "sentence did not exceed the "statutory maximum under the U.S. Code. Id.

To make that determination, the Guevara Court looked to 21 U.S.C. §841 (b)(1)(A), the section under which the defendant had been sentenced. After reviewing the Apprendi decision, the Second Circuit found that Apprendi is implicated in a case even if the sentence falls within the maximum sentence:

> The idea that _Apprendi_ is never implicated if a sentence falls within the maximum sentence prescribed in the applicable penal statute, although found persuasive (or spoke in dicta) by other courts, does not rest on Supreme Court precedent. true, _Apprendi_ held that a fact that increases a penalty beyond a reasonable doubt, but _Apprendi_ held that "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal is exposed."

_Guevara_, 277 F.3d at 121-22, quoting _Apprendi_, 530 U.S. at 490. It is that quoted section that other circuit courts so often overlooked.

In the Sixth Circuit, Judge Merritt wrote in dissent that "the fundamental basis" of the majority's opinion in one case was "clearly contrary to the spirit of _Apprendi_, which says that factual issues having a significant impact on the defendant's sentence should be charged in the indictment and proved to a jury beyond a reasonable doubt." See, _United States v. Harris_, 2001 U.S. App. LEXIS 1189; 2001 FED App. 0030P (6th Cir.) (Merritt, J., dissenting). "The _Apprendi_ approach seems to me to disfavor the current judicial and prosecutorial practice of not giving notice by indictment of the real crime at issue and of leaving most of the more salient factual disputes for the senencing hearing, where the burden of proof is the less rigorous 'preponderance of the evidence' standard and the hearsay rules do not apply." _Id._ To Judge Merritt, under "the logic of _Apprendi_, the government should not have been able to cure its charging error simply by convincing a judge outside the normal rules of evidence that the preponderance of the evidence indicated that [the defendant] committed first degree murder." _Id._

Several district court judges also understood the true meaning of _Apprendi_ from the beginning, even that the sentencing guidelines violated the rules of _Apprendi_:

> [S]ince the Supreme Court handed down _Apprendi_, it has granted certiorari in some forty cases, twenty-six of them federal drug cases in which the circuit court

18

## THE SUPREME COURT HAS MADE CLEAR THAT NEW APPLICATIONS OF GOVERNING

## PRINCIPLES ARE RETROACTIVELY APPLICABLE TO CASES THAT BECAME

## FINAL AFTER THE ANNOUNCEMENT OF THE GOVERNING PRINCIPLE

In American Jurisprudence, questions of "retroactivity" arise in the face of new rules that dramatically change the legal landscape, and alter bedrock understandings of substance or procedure.  But when the Supreme Court simply applies settled precedent to new factual patterns to further clarify how the settled precedent applies in a new area, that is not a new rule at all, and no question exists that the tenet of the new case applies to older cases. United States v. Johnson, 457 U.S. 537, 549 (1982).

> [W]hen a decision of this Court merely has applied settled
> precedents to new and different factual situations, no real
> question has arisen as to whether the latter decision should
> apply retroactively.  In such cases, it has been a foregone
> conclusion that the rule of the later case applies in earlier
> cases, because the later decision has not in fact altered
> that rule in any material way.

Id., citing Truesdale v. Aiken, 480 U.S. 527 (1987) (per curiam); Dunaway v. New York, 442 U.S. 200 (1979); Lee v. Missouri, 439, 461, 462 (1979) (per curiam).

The Supreme Court again demonstrated the retroactivity of new applications of settled principles to older cases in Yates v. Aiken, 484 U.S. 211. 108 S.Ct. 534 (1988).  In Yates, the "settled precedent" was from the Supreme Court's decisions in Sandstrom v. Montana, 442 U.S. 510 (1979).  In Sandstrom, the Court had established that the Due Process Clause of the Fourteenth Amendment prohibits jury instructions that have the effect of relieving a state of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.  Sandstrom, 442 U.S. at 520-24, citing, inter alia, In re: Winship, 397 U.S. 358, 364 (1970). See, Yates, 484 U.S. at 214.

Mr. Yates was tried in a South Carolina trial after the Sandstrom decision. Yates, 484 U.S. at 212.  The Trial judge instructed the jury that it did not have

19

to determine intent beyond a reasonable doubt. Id. Mr. Yates' conviction
was affirmed and his conviction became final. Id. Mr. Yates timely filed an
application for writ of Habeas Corpus in the state court, arguing that it was
error to give the instruction. Id. While the habeas application was pending
in the state supreme court, the U.S. Supreme Court applied the Sandstrom prin-
ciple to a new set of facts, deciding Francis v. Franklin, 471 U.S. 307 (1985).
Yates, 484 U.S. at 213. Mr. Yates brought the Francis decision to the state
supreme court, but that high court denied the writ without opinion. Id.

Mr. Yates petitioned the U.S. Supreme Court for certiorari, and the Court
summarily vacated the judgment of the state's high court, remanding for further
consideration in light of Francis. Yates, 484 U.S. at 213. The state supreme
court found that, while the jury instruction in Mr. Yates' case had been
unconstitutional, he did not deserve relief because they declared that the
improper instruction was decided after Mr. Yates' conviction had become final.
Yates v. Aiken, 290 S.Ct. 231, 233, 349 S.E.2d 84, 85 (1986).

One state justice dissented in part because the Sandstrom decision had
established the basic principle, and that while Francis had applied that principle
to new facts. Francis was not "clear break with prior law." 290 S.Ct. at 239,
349 S.E.2d at 88. Becuase the holding of Francis had its beginnings in Sandstrom,
and because Sandstrom had been decided before Mr. Yates' trial. Interestingly,
the justice noted that the law assigns the "truth-finding function" in a criminal
case "solely to the jury." 290 S.Ct at 239, 349 S.E.2d at 88.

Following that defeat, Mr. Yates again sought a writ of certiorari in
the U.S. Supreme Court. Yates, 484 U.S. at 213. The question before the Court
was whether, as a matter of federal law, the "rule" of Francis – decided well
after Mr. Yates' conviction became final – would apply to Mr. Yates' case.
See, Id. at 214. The Court's answer was yes.

20

The Yates Court noted "that many 'new' holdings are merely applications of principles that were well settled at the time of conviction." Id. at 216. Citing Justice Harlan, the Yates Court concluded that a new decision, which was an application of a settled principle to new facts, applies to a defendant's case on habeas review if the settled principle was decided before the defendant's conviction became final. Id. at 216-17, citing Desist v. United States, 394 U.S. 244, 263-64 (1969). "This reasoning is controlling in this case because our decision in Francis was merely an application of the principle that governed our decision in Sandstrom v. Montana, which had been decided before [Mr. Yates'] trial took place." Yates, 484 U.S. at 216-217.

To the Yates Court, "Francis did not announce a new rule," Id. at 217, even though it extended Sandstrom to a new fact pattern and with a new result. For these reasons, the Francis decision applied retroactively to Mr. Yates' case, and the Yates Court reversed the state supreme court decision and remanded the matter. Id. at 218.

In sum, the Supreme Court decisions in Johnson, Truesdale, Dunaway, and Lee show that when the Supreme Court simply applies settled precedent to new factual patterns to further clarify how the settled precedent applies in a new area, that is not a new rule at all, and no question exists that the tenet of the new case applies to older cases. The Yates Court made clear that this rule thrives in modernity. Under Yates and as a matter of federal law, a rule regarding the prosecution's duty to prove each element of the offense beyond a reasonable doubt decided well after a defendant's conviction became final would apply to the defendant's case if the governing rule applied prospectively to the defendant's case. Yates, 484 U.S. at 214.

21

## WHETHER THE DISTRICT COURT'S JURISDICTION LOST THE POWER TO SUSTAIN THE SUBJECT MATTER JURISDICTION OF THE PRESENTENCING REPORT INVESTIGATION (PSR) WHICH CONTAINS CONSTITUTIONAL ERRORS BASED ON RECENT SUPREME COURT'S LINE OF RULINGS REQUIRING RESENTENCING

The Supreme Court's line of rulings found in Jones v. United States, 526 U.S. 227, 230 (1999); Apprendi v. New Jersey, 120 S.Ct. 2348 (2000); Blakely v. Washington, 542 U.S. ___ (2004), No. 02-1632; United States v. Booker, No. 04-104 (2005); and United States v. Fanfan, No. 04-105 (2005), have placed the Presentencing Report Investigation (PSR) with constitutional errors that cannot create subject matter jurisdiction in order for this Court to consider for sentencing purposes under Rule 32, Subsections (c)(1)(11) and (d)(1) ef. seq. of the Federal Rules of Criminal Procedure (F.R.C.P.).

First, the PSR has been memorialized with innacurate facts as established by the Supreme Court's line of rulings. See, e.g., United States v. Jones, 256 F.3d 922 (9th Cir. 2001) (quoting); United States v. Petty, 982 F.2d 1365, 1368 (9th Cir. 1993).

> A defendant clearly has a due process right not to be sentenced on the basis of materially-incorrect information.

Second, the PSR contains the substance of Title 18 U.S.C. §3553(b) places the PSR erroneously prepared since the remainder of the guidelines now satisfies the Court's constitutional requirements. See, also, the F.R.C.P. 32(c) "Presentence Investigation:"

> (1)(A) In general, the probation officer must conduct a pre-sentence investigation and submit a report to the Court before it imposes sentence unless:
> ... (11) the Court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. §3553, and the Court explains its findings on the record.

22

See also the F.R.C.P. 32(a) "Presentence Report:"

> (1) Applying the Sentencing Guidelines, the Presentence Report must:
> (a) identify all applicable guidelines (including the severed §3553(b))
> and policy statements of the Sentencing Commission,
> (b) calculate the defendant's offense level (not based on Jury's verdict,
> nor on defendant's damission.) Booker and Criminal history category.
> (c) state the resulting sentencing range and kinds of sentencing available,
> (d) identify any factor (in violation of Booker) for departing from the
> applicable sentencing range.
> (Commentaries in Brackets Added)

The PSR's identification over enhancements and the quantity in drug cases

were unconstitutionally used at sentencing without having been admitted by

Petitioner or proved by a jury beyond reasonable doubt. As to this matter,

the Court shall make a finding as to Petitioner's allegations, or shall make

a determination that the PSR contains unproven enhancements and quantity in

drug cases that were facts necessary to support the sentence. See, e.g., United

States v. Guiterrez-Hernandez, F.3d 582 (9th Cir.) cert. denied, 117 S.Ct.

752 (1997).

> When defendant challenges information contained in Presentence
> Investigation Report, District Court must make written findings
> of fact concerning any disputed matter which it relies upon in
> sentencing. - Fed. Rules Cr. Proc., Rules 32(c)(1) 18 U.S.A.

Thus, the need to prepare a PSR is before a criminal defendant pleads

guilty or is convicted. FRAP 32(3)(1). The prosecutor may object that the

preparation will unnecessarily delay the prosecution. But, the likelihood

of significant delay is overstated because it is presumed that reports prepared

by professional probation officers are generally reliable. Fanfan, 20p pg. 14:

> A system that would require that the Jury, not the Judge, to make the
> additional "566 grams" finding is a system in which the Prosecutor, not
> the Judge, would control the sentence. That is because it is the
> Prosecutor (not the Probation Officer) who would have to decide what
> drug amount to charge. He could chose to charge 658.5 grams or 92.5,
> or less. It is the Prosecutor (not the Probation Officer) who,
> through such a charging decision, would control the sentencing range.
> And it is different Prosecutors (not different Probation Officers) who,
> through such a charging decision, would control the sentencing range.

23

> And it is different Prosecutors (not different Probation Officers)
> who, in different cases – say, in two cases involving 566 grams –
> would potentially insist upon different punishments for similar
> defendants who engage in similar criminal conduct involving similar
> amounts of unlawful drugs – say, by charging one of them with the
> full 566 grams and the other with 10.  As long as different
> Prosecutors react differently, a system with a patched-on-jury
> fact-finding requirement would mean different sentences for
> otherwise similar conduct, whether in the context of trials or
> that of plea bargaining.
>
> (Commentaries in Brackets Added)

The PSR contains erroneous District Court's interpretation over sentencing

factors which petitioner had no opportunity to deny or explain.  See, e.g.,

Gardner v. Florida, 430 U.S. 349, 51 L.Ed.2d 393, 97 S.Ct 1197 (1977) (vacated

and remanded because of confidential information in the Presentence Report

Investigation which defendant had no opportunity to deny and explain).  Any factual

inaccuracy in PSR report may be raised for the first time on appeal and requires

resentencing.  United States v. Montas-Mejia, 824 F.2d 360 (5th Cir. 1987).

> Rule 32(c)(3)(D) serves two functions.  First, it protects the
> defendant from being sentenced on inaccurate information.  Second,
> it creates an accurate record of the factors on which the District
> Court relied at sentencing.  Such a record is important because
> Prison or Parole Officers may consider information on PSI when
> making correctional or parole decisions.  See United States v.
> Velasques, 748 F.2d 972, 974 (5th Cir. 1984); United States v.
> Laneel, 810 F.2d 491, 494 (5th Cir. 1987) (PSI stated that
> defendant obtained $100,000 in a mail fraud scheme while defendant
> claimed he obtained only $1,200); United States v. Petito,
> 767 F.2d 607, 611 (9th Cir. 1985).  A failure of the District
> Court to comply with Rule 32(c)(3)(D) may be raised for the
> first time on appeal and requires resentencing.  Velasquez,
> 948 F.2d at 973; Petito, 767 F.2d at 611; United States v.
> O'Neill, 767 F.2d 780, 787 (11th Cir. 1985).

The PSR fails to recognize that the subject matter of Title 21 U.S.C. §841(b)

is an element of the offense as defined in United States v. Moore, 423 U.S. 122,

96 S.Ct 355, 46 L.Ed.2d 333 (1975) at 342, which, is today supported by Jones,

Apprendi, Blakely, Booker, and Fanfan, as well as any other enhancements under

the Sentencing Guidelines that were not admitted by Petitioner, nor proven to a

jury beyond a reasonable doubt.  The instant plea places both the Guidelines and

24

the §841(b)'s subject matters altered for sentencing purposes. This is a plain

error that would require correction.

The PSIR's sentence recommendation exceeds the Guidellines penalties range

to which Petitioner was exposed and places the Guidelines as mandatory application.

FRAP 3b(b), Title 18 U.S.C. §3553(b). Although a Sentencing Judge is not bound

by a presentence recommendation concerning a sentence, United States v. Blythe,

944 F.2d. 356 (7th Cir. 1991), the erroneous information contained in the PSIR

Report could have been intruded and perplexed in the Sentencing Judge's mind because

the PSIR strictly relied on the Guideline's mandatory inforcement. FRAP 32(d)(1)(A).

Title 18 U.S.C. §3553(b):

> ... The Court's determination whether a circumstance was adequately
> taken into consideration the Court shall consider only the
> Sentencing Guidelines, Policy Statements, and official commentary
> of the Sentencing Commission.

Accordingly, the PSIR must contain the classification of the offense and of

the defendant under the categories established by the Sentencing Commission pursuant

to Title 28 U.S.C. §994(a), that the Probation Officer believes to be applicable

to Petitioner's case, the applicable findings for sentencing and the sentencing

range suggested for such a category of offense committed by such a category of

defendant as set forth in the Guidelines issued by the Sentencing Commission pursuant

to §954(a)(1) and an explanation by the Probation Officer of any factors that may

indicate that a sentence of a different kind or a different length. This is not

to say, of course, that a substantive factor may never be determined at sentencing,

provided that such a factor is not an element of the offense. See, e.g., Fanfan,

20p, pg.8:

> This Court's earlier opinions assumed that this system will
> continue. That is why the Court, for example, held in United
> States v. Watts, 519 U.S. 149 (1997) (per curiam), that a Sen-
> tencing Judge could rely for sentencing purposes upon a fact
> that a Jury had found unproved (beyond a reasonable doubt).
> See Id. at 157. See also Id. at 152-153 (quoting United States

25

Sentencing Commission, Guideline Manual §1B1.3 comment, backg'd
(Nov. 1995) (U.S.S.G.), which describes in sweeping language the
conduct that a Sentencing Court may consider in determining
the applicable Guideline range, and which provides that conduct
that is not formally charged or is not an element of the offense
of the conviction may enter into the determination of the
applicable Guidelines sentencing range.

Therefore, the PSR has been memorialized with inaccurate facts based
on previous District Court's "good-faith" interpretations over the subject-
matters of sentencing enhancements and quantity in drug cases.  Such good faith
interpretations, without necessity, have been unconstitutionally allowed for
decades regardless of earlier definitions held by the Supreme Court in
United States v. Moore, supra, (21 U.S.C. §841(b)) and by recent Supreme Court's
line of rulings.

The PSR plays a critical role in the Judge's determination within the
applicable Guideline range for the imposition of an appropriate sentence.  Any
enhancement and the controlled substance found in the mixture – used in a drug
case, are main components on a PSR Report.  Such components are actually tainted
by Plain Error exposed by the Supreme Court's line of rulings.  Petitioner's
PSR shall be corrected, and Petitioner resentenced.

26

## CONCLUSION

Some constitutional errors or violations, such as Appellant's allegations, by their very nature can never be considered harmless. See, <u>Safferwhite v. Texas</u>, 486 U.S. 249, 256 (1988). Accord, <u>Meder v. United States</u>, 527 U.S. 1, 7 (1999). ("[W]e have recognized a limited class of fundamental constructional errors that defy analysis by 'harmless error' standard ... Errors of this type are so intrinsically harmful as to require reversal (i.e. 'affect substantial rights') without regard to their effect on an outcome"). <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993) ("Although most constitutional errors have been held amenable to harmless-error analysis, some will always invalidate the conviction") (citations omitted). <u>Id</u>. at 283 (Rehnquist, C.J. concurring); <u>United States v. Plano</u>, 507 U.S. 725, 735 (1993); <u>Rose v. Clark</u>, 478 U.S. 570, 577-78 (1986) ("Some constitutional errors require reversal without regard to the evidence in the particular case ... [because they] render a trial fundamentally unfair"); <u>Vasquez v. Hillary</u>, 474 U.S. 254, 263-64 (1986); <u>Chapman v. California</u>, 386 U.S. 18, 23 (1967) ("There are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error").

In <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991) a five-justice majority of the Court elucidated this rule of per se prejudice (something called the "rule of automatic reversal") by distinguishing between the concepts of "structural" and "trial" error. Structural defects in the constitution of the trial mechanism are per se prejudicial; trial errors occurring "during the presentation of the case to the jury" are subject to harmless error analysis.

Appellant's allegations implicate <u>Fulminante</u>, Supra, 499 U.S. at 309. See also, <u>Meder v. United States</u>, 527 U.S. 1, 7 (1999); <u>Johnson v. United States</u> (citations omitted).

## RELIEF SOUGHT

**WHEREFORE,** Petitioner moves this Honorable Court to dismiss the rest

of his conviction or remand for resentencing or any equitable remedies.

Respectfully Submitted,

Date:  May 11, 2011

_Reymundo Sanchez H-Z_

Reymundo Sanchez-Hernandez
Pro Se Petitioner

## CERTIFICATE OF SERVICE

I, __Reymundo Sanchez-Hernandez__, hereby certify that I have served a true and correct copy of;

> PETITION FOR ACTUAL INNOCENCE CLAIM PURSUANT TO
> HABEAS CORPUS 28 U.S.C. §2241.

[which is considered filed/served at the moment it was delivered to prison authorities for mailing as provided for in Houston v. Lack, 487 U.S. 266, 101 L.Ed.2d 245 (1988)] to the following listed parties/persons by placing a complete copy of the above described materials in a sealed envelope affixed with the appropriate pre-paid first-class United States postage:

**Clerk of the Court**
United States District Court
Southern District of California
Schwartz U.S. Courthouse
880 Front St., Rm. 4290
San Diego, CA 92101-8900

**U.S. Attorney**
880 Front St., Rm. 6293
San Diego, CA 92101-8893

and deposited same with prison officials here at the Federal Correctional Institution in Lompoc, California, on this the __11th__ day of _____May_____, 20 11.

Pursuant to Title 28, United States Code section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this the __11th__ day of _____May_____, 20 11.


(Signature) _Reymundo Sanchez HdC_
Printed Name: Reymundo Sanchez-Hernandez
Federal Register # 38740-198
Federal Correctional Institution (Low)
3600 Guard Road, Lompoc, CA 93436-2705
No Telephone/Fax/E-Mail Available